**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| STEPHON FULLUM, ) | |
| ) | CASE NO.    1:12CV2060 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

Plaintiff Stephon Fullum ("Fullum") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

### I. Procedural History

On July 28, 2008, Fullum filed an application for SSI, alleging disability since birth due

to clubbed feet, deformed legs, numbness in his legs, and hepatitis.[1] His application was denied both initially and upon reconsideration. Fullum timely requested an administrative hearing.

On November 9, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Fullum, represented by counsel, and an impartial vocational expert ("VE") testified. On February 10, 2011, the ALJ found Fullum was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 10-17.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-6.)

## II. Evidence

*Personal and Vocational Evidence*

Age 49 at the time of his administrative hearing, Fullum is considered a "younger person" under social security regulations. *See* 20 C.F.R. § 416.963(c). He has an eighth grade education and past relevant work as a janitor.[2] (Tr. 24, 27.)

*Medical Evidence*

Fullum was born in October 1961 with clubbed feet and had several corrective surgeries as a young child. As early as May 1991, he was diagnosed with "early degenerative joint disease secondary to clubbed feet and foot surgery." (Tr. 192.) The medical record is not well-developed prior to 2008, but it appears Fullum was also diagnosed with Hepatitis C at some

---

[1] Fullum filed a prior application for disability insurance benefits ("DIB"), which was denied initially on August 26, 2005. (Tr. 119.) Fullum did not appeal the denial.

[2] At the hearing, Fullum's attorney indicated that Fullum had past relevant work as a janitor (Tr. 24-25) and the VE assumed this in responding to the ALJ's hypothetical. (Tr. 36-37.) In the decision, however, the ALJ found, with no explanation, that Fullum had no past relevant work. (Tr. 16.) The parties do not raise any argument about this discrepancy.

2

point in 2005. (Tr. 206-208.) [3]

On October 7, 2008, Mehdi Saghafi, M.D., completed a consultative examination for the Bureau of Disability Determination ("BDD"). (Tr. 213-218.) Fullum reported that he had begun experiencing pain in his left knee and right ankle approximately two years earlier. (Tr. 213.) He stated he had difficulty climbing stairs and had been wearing a knee and ankle brace. (Tr. 213.) Dr. Saghafi found Fullum walked with a stable gait, had a mild limp on the left and right sides, and was "able to stand and walk on the toes and heels with difficulty." (Tr. 213.) Straight leg raising in both the supine and sitting positions was negative, measuring up to 80 degrees. (Tr. 213.) Dr. Saghafi found Fullum had normal muscle strength in his extremities and full grip strength in his hands. (Tr. 215.) Fullum had normal range of motion in all of his joints except his ankles, which measured restricted ranges of motion in all types of flexion. (Tr. 216-218.)

Based on his examination, Dr. Saghafi diagnosed Fullum with "residuals of club feet, right and left, post status" and "multiple corrective procedures." (Tr. 214.) He determined Fullum was able to sit for 8 hours per day and stand/walk for a total of 4 to 5 hours per day without ambulatory aid. (Tr. 214.) He further found Fullum was able to (1) lift and carry 20 to 25 pounds frequently and 26 to 40 pounds occasionally; (2) push/pull and manipulate objects; (3) operate hand and foot controlled devices; (4) drive a motor vehicle; and, (5) climb stairs. (Tr. 214.)

Several weeks later, state agency physician Jerry McCloud, M.D., conducted a records review and physical residual functional capacity ("RFC") assessment. (Tr. 219-226.) Dr. McCloud concluded Fullum could lift and/or carry 50 pounds occasionally and 25 pounds

---

[3] Fullum was incarcerated from October 2005 until July 2008. His prison medical records are included as part of the instant case but are not extensive. (Tr. 205-211.)

3

frequently; stand and/or walk for about 6 hours during a work day; and, sit for about 6 hours in a work day. (Tr. 220.) He also found Fullum had unlimited push/pull capacity, and could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. (Tr. 220-221.) He found that Fullum's "statements regarding his allegations appear to be credible," noting "[h]e does not seem to exaggerate the severity of his condition." (Tr. 224.) In March 2009, state agency physician Paul Morton, M.D., concurred with Dr. McCloud's assessment. (Tr. 252.)

The record reflects Fullum began treatment with MetroHealth physician Juan Pablo Del Rincon Jarero, M.D., in December 2008. (Tr. 244-247.) He reported pain in his left knee beginning approximately a year and half earlier. (Tr. 244.) Dr. Jarero noted that Fullum had "very thin legs" and limited range of motion in his feet and ankles. (Tr. 245.) He diagnosed muscle weakness of the lower extremity and referred Fullum to an orthopedic specialist. (Tr. 246.)

In January 2009, Fullum presented to David Ebenezer, M.D., an orthopedist, for complaints of knee and ankle pain. (Tr. 242-243.) Contemporaneous x-rays of Fullum's knees showed mild degenerative spurring. (Tr. 250.) Ankle x-rays showed joint narrowing, bone spurring, bone deformity, and enthesophytes, indicating marked osteoarthritic changes in his right ankle and mild degenerative changes in his left ankle. (Tr. 248-249.) Dr. Ebenezer referred Fullum to physical therapy and instructed him to take non-steroidal anti-inflammatory medications ("NSAIDS"). (Tr. 242.)

Fullum reported to physical therapy with Surekha Shah, P.T., on January 28, 2009, complaining of increased pain with bending, standing, walking, climbing stairs, and prolonged sitting. (Tr. 234-235.) It was recommended that Fullum continue with two physical therapy

visits per week, for a total of 10 visits. (Tr. 237.) In February 2009, Fullum attended physical therapy again, reporting that "it always feels like I have a constant sprain in my left knee." (Tr. 284-285.)

The record indicates Fullum did not receive any further medical treatment until over a year later. In March 2010, Fullum presented to Anita P. Redahan, M.D., with complaints of knee, ankle and back pain. (Tr. 291-297.) Dr. Redahan noted Fullum was last seen in January 2009 and had "failed to follow up since then." (Tr. 294.) She observed bilateral crepitus in Fullum's knees, limited range of motion in his ankles, and muscle stiffness and limited range of motion in his back. (Tr. 293.) She advised Fullum to follow-up with his primary care physician.

Six months later, in September 2010, Fullum presented to Joseph Labastille, M.D., reporting pain, tingling, and weakness in both legs with difficulty walking. (Tr. 298-306.) He also complained of left shoulder pain. (Tr. 298.) On examination, Dr. Labastille noted an unsteady gait, hypotrophy of the calf muscles, and decreased muscular strength in Fullum's legs. (Tr. 300.) He ordered x-rays of Fullum's spine and left shoulder. (Tr. 301.) Fullum's spinal x-ray showed "mild degenerative changes," including "minimal narrowing of the L4-L5 intervertebral disc space" and "degenerative spurring . . . from the end-plates of the distal thoracic spine." (Tr. 307.) His shoulder x-ray showed "[n]o acute abnormality." (Tr. 307.) Dr. Labastille referred Fullum to a neurologist. (Tr. 301.)

On September 17, 2010, Fullum presented to Joyce Lee-Iannotti, M.D., for a neurological exam. (Tr. 309-314.) Fullum reported a worsening gait and indicated he had hurt his back playing basketball. (Tr. 309-310.) He indicated his pain was worse when standing and "better with sitting," and that physical therapy had provided "little relief." (Tr. 310.) Dr. Lee-Iannotti

5

noted a large fiber neuropathy in his feet and she suspected osteoarthritis/degenerative disc disease in his back. (Tr. 313-314.) She ordered an MRI of his lumbar spine, which showed osteoarthritis in the thoracic and lumbar regions of the spine, advanced stenosis at T-11 -T12, and disc protusion at L3-L4. (Tr. 314, 351.) The following month, Fullum underwent an MRI of his thoracic spine, which revealed spondylitic changes resulting in stenosis with spinal cord compression and an abnormal cord signal. (Tr. 324, 351.) Spondylitic changes were also discovered in Fullum's lower cervical spine. (Tr. 351.)

Dr. Lee-Iannotti saw Fullum again in December 2010. (Tr. 350-354.) She noted reduced muscle strength in his left hip and knee and decreased sensation in his feet and ankles. (Tr. 353.) In addition, she found that his condition was worsening and recommended surgical evaluation. (Tr. 354.) Fullum underwent a thoracic laminectomy on April 21, 2011. (Tr. 338.)

*Hearing Testimony*

At the November 9, 2010 hearing, Fullum testified to the following:

- He has an eighth grade education. While incarcerated, he obtained some instruction in "basic math [and] reading." He attempted to obtain a GED, but was unsuccessful. (Tr. 24-25, 27.)

- He has not worked since July 28, 2008 because of back pain and difficulties with his legs. When he walks, his legs start to "drag" and "just go out on" him, causing him to fall. (Tr. 27-28.)

- He uses a cane. He can walk for about 15 to 20 minutes before his knees get "weary" and he experiences pressure and swelling in his right ankle. (Tr. 28.)

- He had approximately six surgeries on his legs when he was a child. He remembered wearing a cast from his waist down to his legs for almost two years. After the cast was removed, he wore braces and had "huge amounts of therapy." (Tr. 29.)

- He started experiencing problems with his legs approximately three years ago. He feels a tingling sensation from the middle of his back all the way down through

6

> both legs. He also feels tingling in the fingers of his left hand. He experiences pain in his lower back and right ankle. He is not currently taking pain medication. (Tr. 29-30.)
>
> • His most comfortable position is lying down. In a typical eight hour day, he spends about four hours lying down and elevating his legs. (Tr. 31.)
>
> • He can be on his feet for about thirty minutes before needing to sit down. In a typical eight hour workday, he can be on his feet for a total of one and a half hours. (Tr. 32.) He can sit for approximately twenty minutes before needing to get up and move around. When he gets up, he needs to move around for about ten minutes before he can sit back down again. (Tr. 32-33.) He can lift 10 to 20 pounds. (Tr. 33.)
>
> • He gets shots every 90 days for his Hepatitis C, and experiences no symptoms. (Tr. 34.) In addition to his back, knee, and ankle pain, his left shoulder is "messed up" and it is difficult for him to extend his left hand. (Tr. 34-35.)
>
> • He lives with his fiancé. He does not do any chores because it bothers him. He spends most of the day watching television. He has no hobbies or interests. (Tr. 33-34.)

(Tr. 21-39.)

After the VE described Fullum's past relevant work as a cleaner/janitor (unskilled, medium level of exertion), the ALJ posed the following hypothetical to the VE:

> Please consider this hypothetical: it involves a man with – a middle-aged gentleman with this work history and an 8th grade limited education who does not have his equivalency, nor does he have recently completed academic or vocational training. The worker is 48 as we begin the relevant period. In a drug and alcohol free environment, able to do light work if he had a sit/stand option as follows: he could be on the feet standing or walking for approximately two hours out of an eight hour workday, but not all at once and sitting has few restrictions. He could work in a seated position for at least six hours out of an eight-hour workday for normal breaks [INAUDIBLE]. With a combination of sitting and standing he could work eight out of eight if given the normal breaks and the lunch hour. Due to impairments of the feet and lower extremities he can't do balancing tasks while on the feet, nor be required as part of the job to work at unprotected heights or walk on uneven ground as part of the job. Now, he can lift and carry between 10 and 20 pounds on an occasional basis, but it would be for short distances. He could pick them up, but he could only

7

> be carrying 20 pounds of weight for a short amount of time or in terms of distance. Postural adjustments could be done occasionally. You should know that the worker is left-hand dominant. While his fingering and handling are intact, reaching in all directions is limited with the left upper extremity. He could hold items two-handed and certainly hold things close to the body, but for over-the-shoulder reaching and extension it would be one-third of the time or less and slowly done with the left upper extremity.

(Tr. 36-37.) The VE testified that such a person could not perform the past relevant work but that a selected range of light, unskilled cashiering complied with the hypothetical. With the sit/stand option, the VE estimated there would be approximately 2,800 cashier jobs in the local economy, 8,400 in the State of Ohio, and approximately 200,700 in the national economy. (Tr. 37-38.)

Fullum's attorney then asked "[i]f you added into the hypothetical that the individual when he . . . changed position he would have to walk around for a couple minutes before he went back to either the sitting or standing position, would that change your answer?" (Tr. 38.) The VE stated that "such an individual wouldn't be able to do those jobs." (Tr. 38.)

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits if she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Fullum established medically determinable, severe impairments, due to clubbed feet, status post remote surgical correction, bilateral ankle osteoarthritis, mild degenerative spurring of the patellae, lower extremity paresthesias and pain, degenerative and spondylitic changes to the spine, left shoulder pain, hepatitis C, and marijuana abuse.  (Tr. 12.)  However, the ALJ found his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Part 404, Subpt. P, App. 1.  (Tr. 12-13.)  Fullum was determined to have a Residual Functional Capacity ("RFC") for light work with certain limitations.  (Tr. 13.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Fullum was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Sentence Six Remand*

Fullum argues this matter should be remanded to the Commissioner because new and material evidence emerged after the ALJ's decision in February 2011 regarding the continuing deterioration of his condition. He describes this new evidence as follows:

> The evidence shows that Mr. Fullum's neurologist, Dr. Joyce Lee-Iannotti, referred him for a surgical consultation because of worsening weakness and pain. (Tr. 354.) Mr. Fullum saw neurologist Dr. Sean Nagel, M.D. on February 23, 2011. Dr. Nagel opined that the abnormal signal changes seen in the spinal cord during previous testing likely indicate myelomalacia, a softening of the spinal cord, at T11-T12. He also found moderate stenosis at L3-L4. (Tr. 362-363.) Dr. Nagel ordered a CT scan of Mr. Fullum's thoracic spine, which showed thickened calcifications and a diffuse disc bulge, indicating moderate to severe stenosis. (Tr. 365.) Dr. Nagel also observed that Mr. Fullum's legs were "markedly atrophied" and worried about further injury exacerbating his symptoms. (Tr. 363.) At Mr. Fullum's next appointment on March 16, 2011, Dr. Nagel noted that Mr. Fullum's impairments had progressed over the last year and a half and continued to deteriorate; therefore, he recommended surgery. (Tr. 367.) On April 21, 2011,

11

> Mr. Fullum underwent a thoracic laminectomy and possible instrumented fusion with hip graft. (Tr. 338.)

(Doc. No. 15 at 10.) Fullum argues this evidence meets the requirement for remand because it provides "important information as to the continuing seriousness" of his back and lower extremity paresthesias and pain, both of which were present at the time of the prior administrative proceedings. *Id*. He also notes that the appointments, testing and surgery all occurred after the ALJ issued his February 10, 2011 decision and, thus, did not exist at the time of the administrative proceedings. *Id*. at 10-11.

The Commissioner argues remand is not warranted because the evidence relates to the subsequent deterioration of a previously non-disabling condition. Citing Sixth Circuit precedent, the Commissioner argues such evidence is not a proper basis for remand and that Fullum's remedy is to file a new application for benefits. *See Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 712 (6th Cir. 1988). He also argues the additional medical evidence would not have changed the ALJ's decision because it does not show Fullum's condition following his surgery, noting that "[t]he mere fact that Plaintiff allegedly underwent surgical intervention for treatment of his spinal condition does not equate with disability." (Doc. No. 17 at 12.)

Sentence six of 42 U.S.C. § 405(g) provides that:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence, which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). Interpreting this statute, the Sixth Circuit has held that "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*,

12

496 U.S. 617, 626 (1990)). Evidence is "material" only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id*. (quoting *Sizemore*, 865 F.2d at 711). *See also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (noting that evidence is "material" if it "would likely change the Commissioner's decision."); *Courter v. Comm'r of Soc. Sec.*, 2012 WL 1592750 at * 11 (6th Cir. May 7, 2012) (same). In order to show "good cause," a claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. *See also Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (1984). This includes "detailing the obstacles that prevented the admission of the evidence." *Courter*, 2012 WL 1592750 at * 11. *See also Bass*, 499 F.3d at 513. The burden of showing that a remand is appropriate is on the claimant. *See Foster*, 279 F.3d at 357; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).

The evidence submitted by Fullum regarding the period after the ALJ's decision is neither new or material. Although the particular medical records at issue were not created until after the ALJ's February 10, 2011 decision, the Court is not convinced that the information contained in those records is "new" for purposes of sentence six of § 405(g). As Fullum himself acknowledges, the additional medical records demonstrate his deteriorating condition and the "continuing seriousness" of his back and lower extremity impairments. (Doc. No. 15 at 10). The record before the ALJ, however, contained repeated references to Fullum's reports of progressive pain and weakness. For example, Dr. Saghafi's assessment states that Fullum reported his "symptoms have been getting worse for the past 2 years." (Tr. 213.) Moreover, Fullum's physicians noted in September and December 2010 that Fullum had reported a "worsening gait"

13

and "progressive back pain." (Tr. 309, 350.) Indeed, in December 2010 (two months prior to the ALJ decision), Dr. Lee-Iannotti noted "complaints of progressive LE weakness and paresthesias with gait disturbance in setting of worsening back and left knee pain." (Tr. 353.) Dr. Lee-Iannotti's notes from late 2010 also explicitly reference the fact that surgery was then under consideration. (Tr. 354.) Further, the ALJ decision itself references Fullum's complaint that "his leg conditions have worsened during the pendency of this case." (Tr. 14.)

In light of the above, the Court finds Fullum's additional medical evidence is best characterized as cumulative to the evidence already considered by the ALJ. As such, it is not considered "new" for purposes of sentence six of § 405(g). *See e.g. Elliott v. Apfel*, 2002 WL 89668 at * 4 (6th Cir. Jan. 22, 2002) (finding remand was not warranted because "the purportedly new evidence is not new at all; it is merely cumulative.")

Moreover, even if the post-ALJ decision medical records were considered "new," Fullum's request for remand would nevertheless fail because the records are not "material." As noted above, evidence is "material" only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Foster,* 279 F.3d at 357. Here, Fullum has not demonstrated that the additional evidence would have caused the ALJ to reach a different conclusion. Although the additional evidence indicates Fullum underwent thoracic surgery in April 2011, there is no evidence regarding Fullum's condition following his surgery. The Court is left to speculate regarding the nature of Fullum's post-operative recovery and whether, or to what degree, surgery impacted his condition. As the Commissioner notes, "[t]he mere fact that Plaintiff underwent spinal surgery" does not necessarily mean that the ALJ would have found him disabled during the relevant time

14

period. (Doc. No. 17 at 12.)

Further, to the extent Fullum is arguing the additional evidence is material because it demonstrates the deteriorating nature of his condition, the Courts finds this argument unpersuasive. The Sixth Circuit has rejected this line of reasoning, finding that "[e]vidence which reflect[s] the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began." *Sizemore*, 865 F.2d at 712. *See also Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (finding that "evidence show[ing] his condition has worsened since the Secretary's decision . . . does not affect" the Secretary's decision).

Accordingly, remand is not warranted because Fullum's additional evidence is neither "new" nor "material" for purposes of sentence six of § 405(g).[4]

### *RFC Determination*

Fullum next argues the ALJ's decision is not supported by substantial evidence because the RFC determination does not properly account for his symptoms of disabling pain. He maintains the ALJ focused too narrowly on "outdated medical opinions and small elements in Mr. Fullum's record to demonstrate a lack of credibility and no disabling pain." (Doc. No. 15 at 13.) Specifically, Fullum argues the ALJ improperly relied on the opinions of Drs. Saghafi and McCloud, both of whom completed their assessments in 2008 without the benefit of later evidence regarding Fullum's deteriorating condition. Fullum also argues the ALJ unfairly discounted the objective medical evidence in the record as a whole and improperly relied on

---

[4] Because Fullum's additional evidence at issue is neither new nor material, it is unnecessary for the Court to analyze the requirement of "good cause." *See Black v. Comm'r of Soc. Sec.*, 2012 WL 4506018 at * 15 (N.D. Ohio Sept. 28, 2012).

anecdotal evidence when conducting the credibility assessment. (Doc. No. 15 at 15.)

The Commissioner argues the ALJ's credibility determination is supported by substantial evidence, considering that Fullum (1) reported playing basketball during the relevant time period; (2) went for over a year between 2009 and March 2010 without seeking medical treatment; and (3) showed no spinal muscle spasms and negative straight-leg raising to eighty degrees in 2008. (Doc. No. 17 at 13.) The Commissioner also emphasizes that the ALJ did provide significant accommodation for Fullum's functional limitations in the RFC by expressly including a sit/stand option and allowing only occasional reaching in all directions with the left upper extremity. (Doc. No. 17 at 14.)

A claimant's RFC is the most that he can still do despite his functional limitations. 20 C.F.R. § 404.154(a); SSR 96-8p. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. 20 C.F.R. § 404.1546(c). The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942 at * 6 (6th Cir. Jan. 15, 2008) (stating that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") A claimant's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide a basis for overturning the Commissioner's RFC determination. *Carter v. Comm'r of Soc. Sec.*, 2012 WL

16

1028105 at * 7 (W.D. Mich. March 26, 2012).

The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 2004 WL 2567650 (6th Cir. Nov. 10, 2004); *Poe v. Comm'r of Soc. Sec.*, 2009 WL 2514508 (6th Cir. Aug. 18, 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 2009 WL 2514508 at * 7.

Here, the ALJ formulated Fullum's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant requires an alternating sit, stand option with occasional postural adjustments. The claimant can be on his feet for approximately two hours in an eight-hour workday, but not all at once. The claimant could work in a seated position for at least six hours in an eight-hour day if given normal breaks and a lunch hour. With a combination of sitting and standing, the claimant could work for eight hours in an eight-hour workday if given normal breaks and a lunch hour. He must work in a drug and alcohol free environment. The claimant cannot perform work activities requiring balance, exposure to unprotected heights, or walking on uneven ground. The claimant can lift and carry between ten and twenty pounds on an occasional basis for short distances. The claimant is limited to occasional reaching in all directions with his left hand and arm.

(Tr. 13.) Despite Fullum's arguments to the contrary, the ALJ formulated the RFC based on a thorough review of both the entire medical record and Fullum's own statements and hearing testimony. While the medical record prior to 2008 is sparse, the ALJ nevertheless discussed the existing record evidence from that time period, including degenerative changes noted in 1991 and Fullum's use of an ankle brace as of 2005. (Tr. 14.) The ALJ then thoroughly recounted the evidence spanning 2008 to 2010, specifically discussing both the relevant objective clinical findings and x-rays, as well as Fullum's subjective complaints. (Tr. 13-15.)

17

The ALJ did specifically discuss the 2008 assessments of Doctors Saghafi and McCloud, however, he acknowledged that these physicians did not have the benefit of the full record, including the hearing testimony. (Tr. 16.) For that reason, the ALJ ascribed only "some weight" to their opinions. (Tr. 16.) Moreover, consistent with this observation, the ALJ expressly incorporated additional limitations into the RFC to reflect Fullum's subsequent medical records and his own hearing testimony. For example, although Doctors Saghafi and McCloud concluded Fullum could lift and carry 20 to 25 pounds frequently, the RFC provides that Fullum can "lift and carry between ten and twenty pounds on an occasional basis for short distances." (Tr. 13.) Further, the RFC tempers Doctors Saghafi and McCloud's standing/walking opinions (of 4 to 5 hours per workday, and 6 hours per workday, respectively) by limiting Fullum to standing for "approximately two hours in an eight-hour workday, but not all at once." (Tr. 13.) The RFC also includes a sit/stand option and additional restrictions regarding Fullum's ability to reach with his left hand and arm. (Tr. 13.) These aspects of the RFC are generally consistent with Fullum's own hearing testimony in November 2010. (Tr. 32-35.)

Fullum nevertheless contends that the ALJ ignored his complaints of disabling pain. It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk,* 667 F.2d at 538. Credibility determinations regarding a claimant's subjective complaints of pain rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Indeed, the ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in

18

the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.3d 1027, 1034 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"). To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96–7p, Purpose.

Here, the ALJ accepted that Fullum suffered from various severe impairments, including clubbed feet, bilateral ankle osteoarthritis, lower extremity paresthesias and pain, degenerative spondylitic changes to the spine, and left shoulder pain. (Tr. 12.) He found the impairments "have more than a minimal effect on [Fullum's] ability to perform basic work activities," but found Fullum's statements concerning the intensity, persistence, and limiting effects of the symptoms to be not credible.

The ALJ acknowledged Fullum's pain complaints repeatedly throughout his decision. (Tr. 14-15.) However, he found Fullum to be lacking in credibility for the following reasons:

> The claimant had multiple, lengthy gaps in treatment for his musculoskeletal impairments, most notable between December of 2005 through October 2008, and February 2009 through March of 2010. (See generally 2F/7; 12-05, 2F/8; 6-08, 9F/29; 2-09, and 9F/36; 3-10). At the time of the consultative examination, the claimant could stand and walk on his heels and toes. (3F/2; 10-08). Even with his more recent medical visits, the claimant continued to be able to ambulate. (9F/54; 9-10). The claimant offered at hearing that he was not taking any medication for pain. The claimant testified that he could only sit for fifteen or twenty minutes, yet remained seated for a hearing that lasted over half an hour. The claimant alleges disability since birth, yet there are only minimal medical records evidencing impairment. Further, he argued that he has difficulty walking and that his legs give out, yet reported to his treating physician that he threw his back out playing basketball in September of 2010. (3E/2 and 9F/55; 9-

19

      10).  The claimant's asserted limitations are also inconsistent with his reason for incarceration; he was imprisoned for aggravated burglary. (1E/6).

(Tr. 15.)  The ALJ provided sufficiently specific reasons for his credibility determination (i.e. the multiple gaps in treatment, lack of objective medical evidence evidencing disability, and conflict between his self-reported pain and ability to play basketball and commit aggravated burglary) and supported those reasons with specific evidence in the record.  Fullum's arguments to the contrary are without merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

                    s/ Greg White
                    United States Magistrate Judge

Date: May 14, 2013